## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**CHANNEL ALLEN,** and
other similarly-situated individuals,

       Plaintiff,

v.

**METROPOLITAN CHILDREN
AND YOUTH, INC. –
RENAISSANCE HEAD START**,

       Defendant.

_____

Case No.: _____

HON. _____


<u>JURY TRIAL DEMANDED</u>

## <u>COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, Channel Allen, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective Action Complaint against Defendant, Metropolitan Children and Youth, Inc. - Renaissance Head Start (hereinafter referred to as "Renaissance" or "Defendant"), and states as follows:

### <u>INTRODUCTION</u>

1.    This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, Channel Allen (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201, *et seq*.

2.      Defendant employed Plaintiff as an hourly Head Start Assistant Teacher. Commencing in October 2015, and continuing until May 2017, Plaintiff worked beyond 40 hours during numerous separate workweeks.

3.      Defendant was obligated by the FLSA to compensate Plaintiff for work performed beyond 40 hours in each given workweek at a rate one and one-half times Plaintiff's normal hourly rate.

4.      Defendant was aware of its obligation to compensate Plaintiff for work performed beyond 40 hours in a workweek during the relevant time period at one and one-half times Plaintiff's regularly hourly rate. Defendant nevertheless failed and refused to pay Plaintiff for work performed beyond 40 hours in each given workweek during the relevant time frame at a rate one and one-half times Plaintiff's normal hourly rate. Defendant's conduct in that regard violates the overtime provisions of the FLSA.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because it raises a federal question under 29 U.S.C. § 201, *et seq*.

6.      Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under

the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

7.      Defendant operates a head start program and provides custodial, educational, and developmental services to preschool age children to prepare them to enter elementary school grades. Therefore, Defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(B).

8.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in the state of Michigan and does business within the state.

9.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant maintains its principal place of business in this district, employs Head Start Assistant Teachers in this district, conducts business in this district, and a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

10.     Plaintiff is a resident of Detroit, Michigan, and was employed by Defendant as an hourly Head Start Assistant Teacher from approximately October 31, 2015, to May 31, 2017.  Plaintiff signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit A*.

11.    Defendant is a Michigan domestic nonprofit corporation with its headquarters in Detroit, Michigan. Defendant is registered with the Michigan Department of Licensing and Regulatory Affairs with a registered office address of 13110 Fourteenth St., 3rd Floor, Detroit, Michigan 48238, and its registered agent is Eva L. Wilson.

12.    Defendant operates a head start program and provides custodial, educational, and developmental services to preschool age children to prepare them to enter elementary school grades. As explained in Defendant's Annual Report:

> Head Start services are provided in a preschool classroom with teachers who are trained in early childhood education. Teachers plan activities for children to encourage growth and development. Each classroom is divided into learning areas which provide direct, hands-on experiences that help children learn. The learning areas include blocks, dramatic play, toys and games, art, library, science, sensory, music and movement, and computers. Classroom activities and materials support the development of children's emerging language, literacy, math and science skills, and enhance reasoning, problem solving, and decision-making skills.

*See* http://www.renheadstart.org/annual-report.html (last visited on October 20, 2017).

13.    On its website, Defendant describes its mission as: "Creating an educational environment of excellence, creativity and independent thinking, Renaissance Head Start provides children and families A NEW BEGINNING FOR A BRIGHTER TOMORROW." *See* http://www.renheadstart.org/mission-services.html (last visited on October 20, 2017).

4

14.     According to a job posting on Defendant's website, a Head Start Assistant Teacher "is a part of a teaching team and works as a partner with the lead teacher in developing activities for preschool (Head Start) children to provide them with various experiences and an appropriate learning environment." *See* http://www.renheadstart.org/employment.html (last visited on October 20, 2017).

15.     Defendant owns and operates at least seven (7) preschools in Michigan that employ Assistant Teachers on an hourly, non-exempt basis.    See http://www.renheadstart.org/locations.html (last visited on November 7, 2017).

16.     Unlike Teachers, Assistant Teachers do not require any experience or a teaching certificate.  Contrary to the job posting, Assistant Teachers are not required to have a specialized degree.

17.     Upon information and belief, Defendant classified Assistant Teachers as non-exempt hourly employees, but nonetheless refused to pay them overtime premiums.

18.     Upon information and belief, during the relevant time period, Defendant has employed dozens, if not hundreds, of current or former Head Start Assistant Teachers across at least six locations in Detroit, Michigan.

### GENERAL ALLEGATIONS

19.     Defendant employed Plaintiff as an hourly Head Start Assistant Teacher in Detroit, Michigan, from October 31, 2015, until Defendant terminated

5

her on May 31, 2017.

20.   As a Head Start Assistant Teacher, Plaintiff - under the general supervision of the lead teacher - assisted with classroom operations, including planning and carrying out activities, supervising the children and classroom, and maintaining a classroom environment that is nurturing, consistent, supportive and developmentally appropriate. Together with the lead teacher, Plaintiff made in-home visits and assisted with parent-teacher conferences.

21.   The job duties and responsibilities of Assistant Teachers do not vary from location to location.   Instead, all Assistant Teachers have the same job responsibilities, are paid by the hour, and are subject to the same company-wide timekeeping and pay practices.

22.   During the course of her employment with Defendant, Plaintiff was paid approximately $13.00 per hour, working anywhere from 40-45 hours per week.

23.   Under the FLSA, employees who work more than 40 hours a week are entitled to overtime. 29 U.S.C. § 207. Unless exempt, employees covered by the FLSA must receive overtime pay for hours worked over 40 in a workweek at a rate not less than time and one-half their regular rates of pay. *Id*.

24.   Moreover, employees who work for certain "enterprises," including preschools, are covered by the FLSA. 29 U.S.C. § 203(s)(1)(B). Defendant is a covered enterprise under 29 U.S.C. § 203(s)(1)(B) as a "preschool," because it

establishes curricula, employs education coordinators, gives employees the title of "teachers," advertises that it promotes "school readiness in the areas of language and cognitive development, early reading and mathematics skills, socio-emotional development, physical development and approaches to learning," and serves children averaging three to four years of age.[1] *See Perez v. Contingent Care, LLC*, 820 F.3d 288, 291 (8th Cir. 2016) (affirming lower court's opinion that the defendant day care provider was a covered enterprise under 29 U.S.C. § 203(s)(1)(B) as a "preschool," because it established curricula, employed lesson plan coordinators, gave employees the title of "teachers," advertised that it provided "Reading/Math Services," and served children averaging three years of age).

25.    The Department of Labor's ("DOL") guidance confirms that Defendant is a "preschool." An opinion letter by the DOL's Wage and Hour Division states:

> The term "preschool" includes any establishment or institution which accepts for enrollment children of preschool age for purposes of providing custodial, educational, or development services designed to prepare the children for school in the years before they enter the elementary school grades. **This includes day care centers, nursery schools, kindergartens, <u>head start programs</u> and any similar facility primarily engaged in the care and protection of preschool children**.

Opinion Letter Fair Labor Standards Act (FLSA), 1999 WL 1002394, at *1 (emphasis added).

---

[1] Renaissance Head Start Annual Report, November 1, 2015 – October 31, 2016, available at http://www.renheadstart.org/annual-report.html (last visited on October 20, 2017).

26.     As a covered enterprise under the FLSA, Defendant was obligated to compensate Plaintiff and similarly situated employees for work performed beyond 40 hours in each given workweek at rates not less than one and one-half times the regular rates at which they were employed.

27.     Since at least October 2015, Defendant has violated and is violating §§ 207 and 215(a)(2) of the Act by employing certain employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than 40 hours, without compensating said employees for their employment in excess of 40 hours in such workweeks at rates not less than one and one-half times the regular rates at which they were employed. Specifically, Defendant employed Head Start Assistant Teachers - including Plaintiff - for over 40 hours in a workweek to provide child care services and/or preschool instruction and failed to pay for overtime hours worked, resulting in a failure to pay Plaintiff and the assistant teachers one and one-half times the applicable regular rate for all hours worked in excess of 40 in a workweek.

28.     What's more, Renaissance employs illegal policies and procedures deliberately designed to skirt its obligations under the Act. Specifically, Renaissance trains and directs its assistant teachers - including Plaintiff - to submit time cards reflecting no more than 40 hours worked in any given workweek and rejects all time cards not in compliance with this directive. Thus, Renaissance is aware of its

obligation under the FLSA to provide overtime compensation to Plaintiff and other assistant teachers, yet deliberately employs a scheme designed to circumvent the Act.

29.     In order to reasonably carry out the required duties and responsibilities of a Head Start Assistant Teacher, it was often necessary for Plaintiff and other assistant teachers to work more than 40 hours per week and, indeed, Plaintiff and other assistant teachers worked more than 40 hours per week during numerous separate workweeks. For example, Plaintiff and other assistant teachers were often required to work beyond their scheduled work hours because the parents or guardians of Defendant's students were often late picking up their children.

30.     Defendant regularly required assistant teachers to arrive at work before their scheduled shifts to perform essential work tasks, such as setting up the class room and attending meetings with Teachers and other staff members.  Assistant teachers were trained and instructed not to include these pre-shift activities on their timesheets.

31.     Similarly, Defendant regularly required assistant teachers to continue working after their scheduled shift to perform essential work tasks like, cleaning up the class room and attending meetings with teachers, parents, and other staff members.  Assistant teachers were trained and instructed not to include these pre-shift activities on their timesheets.

32.    Defendant was aware that an assistant teacher's duties and responsibilities often required Plaintiff and other assistant teachers to work more than 40 hours per week. Yet Defendant refused to adjust Plaintiff's required job duties and responsibilities so as to reasonably allow for Plaintiff and other assistant teachers to consistently perform their weekly duties within 40 hours. Rather, Defendant required Plaintiff and other assistant teachers to work beyond 40 hours in numerous separate workweeks while denying them overtime pay and prohibiting them from submitting time cards reflecting more than 40 hours worked in any given workweek.

33.    For example, in a recorded telephone conversation between Plaintiff and a Renaissance supervisor, Plaintiff asked why she was not paid for overtime hours worked. The Renaissance supervisor responded:

- "What overtime?"

- "We don't get overtime."

- "You ain't gonna get no overtime."

- "Ain't no overtime. [Renaissance] don't pay overtime."

- "You don't get no overtime."

- "You might work more than 40 hours a week, but you only get paid for 40 hours a week."

34.    In a text message communication between Plaintiff and another

Renaissance supervisor, Plaintiff again inquired as to why she was not paid for overtime hours worked. The Renaissance supervisor responded: "We don't get paid overtime."

35.     Defendant's conduct described herein not only constitutes a *willful* violation of the FLSA's overtime provisions,[2] but also violates §§ 211(c) and 215(a)(5) of the Act, in that since at least October 2015, Defendant has failed to make, keep, and preserve adequate and accurate records of Defendant's employees and of the wages, hours, and other working conditions and practices of employment maintained by Defendant, as prescribed by the regulations (29 Code of Federal Regulations Part 516) promulgated pursuant to § 211(c) of the Act, in that the records kept by Defendant failed to accurately show, among other things, the hours worked each day and each workweek, with respect to Plaintiff and similarly situated employees.

36.     At all relevant times, Defendant directly benefited from the uncompensated overtime work performed by Plaintiff and other assistant teachers, and the tasks undertaken in connection with the uncompensated work are integral and indispensable to their job duties and responsibilities as assistant teachers.

37.     Despite knowing Plaintiff and other assistant teachers performed work

---

[2] Employers who willfully or repeatedly violate the FLSA's overtime pay requirements are subject to a civil penalty of up to $1,100 for *each* violation. 29 U.S.C. § 216(e)(2).

beyond 40 hours in numerous workweeks, Defendant and its managers failed to make any effort to stop or disallow this overtime work and instead suffered and permitted it to happen.

38.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and other assistant teachers.

39.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other assistant teachers worked. However, Defendant failed to do so and failed to compensate Plaintiff and other assistant teachers for the overtime work they performed.

40.    At all relevant times, Plaintiff and other assistant teachers were non-exempt hourly employees, subject to the requirements of the FLSA.

41.    At all relevant times, Defendant used its illegal policies against Plaintiff and other assistant teachers in order to pressure them into performing overtime work and submitting time cards reflecting no more than 40 hours worked for any given workweek. Indeed, Defendant expressly trained and instructed Plaintiff and its assistant teachers not to submit time cards reflecting more than 40 hours worked for any given workweek.

42.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the assistant teachers of wages owed for work performed beyond 40

hours in numerous workweeks.

43.    Defendant knew or should have known that work performed by Plaintiff and other assistant teachers beyond 40 hours in any given workweek is compensable under the law at a rate one and one-half times the applicable hourly rate. Indeed, in light of Defendant's illegal practice of instructing Plaintiff and other assistant teachers not to submit time cards reflecting more than 40 hours worked for any given workweek and its rejection of time sheets not in compliance with this directive, there is no conceivable way for Defendant to establish that it acted in good faith.

44.    Furthermore, because Plaintiff and all other Assistant Teachers were paid on an hourly basis, the white collar exemptions – such as the professional exemption – are inapplicable.

45.    Unpaid wages related to the uncompensated overtime work described herein is owed to Plaintiff and the assistant teachers at the FLSA mandated overtime premium of one and one-half their regular hourly rate.

## COLLECTIVE ACTION ALLEGATIONS

46.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly Head Start Assistant Teachers who worked for Metropolitan Children and Youth, Inc. - Renaissance Head Start at any location at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

47.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

48.    Excluded from the proposed FLSA Collective are Defendant's executive, administrative and professional employees, including teaching professionals and outside sales persons.

49.    Consistent with Defendant's policies and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid overtime compensation when they worked beyond 40 hours in a workweek.

50.    All of the work Plaintiff and the members of the FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the FLSA Collective performed.

51.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

- Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all hours worked in excess of 40 per workweek; and

- Willfully failing to pay its employees, including Plaintiff and the

14

members of the FLSA Collective, an overtime premium for all hours worked in excess of 40 per workweek; and

- Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant, by training and instructing Plaintiff and the members of the FLSA Collective not to submit time cards reflecting more than 40 hours worked for any given workweek and rejecting time cards not in compliance with Defendant's directive.

52.    Defendant is aware, or should have been aware, that federal law required it to pay Plaintiff and the members of the FLSA Collective an overtime premium for all hours worked in excess of 40 per workweek.

53.    Defendant's unlawful conduct was widespread, repeated, and consistent.

54.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

55.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated overtime owed to each

employee – do not vary substantially among the proposed FLSA Collective members.

56.     There are many similarly situated current and former assistant teachers who were underpaid in violation of the FLSA and would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

57.     Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, includes dozens, if not hundreds, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

## **RULE 23 CLASS ACTION ALLEGATIONS**

58.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former hourly Head Start Assistant Teachers who worked for Metropolitan Children and Youth, Inc. - Renaissance Head Start at any location at any time in the past three years.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition if necessary.

59.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll

and personnel records.

60.    There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

a.  Whether the Rule 23 Class members were paid for all hours *worked*;

b.  Whether a contractual obligation existed for Defendant to pay Rule 23 Class members for all hours worked; and

c.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

61.    Plaintiff's claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

62.    Plaintiff will fully and adequately protect the interests of the Rule 23 Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

64.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

65.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

66.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification

pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

67.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

68.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

69.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

70.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

71.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

72.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

73.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

74.     At all times relevant to this action, Defendant required Plaintiff and all the FLSA Collective members to perform work beyond 40 hours in numerous workweeks, yet Defendant failed to pay these employees the federally mandated overtime compensation for all services performed.

75.     The overtime work performed by Plaintiff and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

76.     In workweeks where Plaintiff and other Collective members worked 40 hours or more, all overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207.

77.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its assistant teachers to perform their required work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

78.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Class Action)
### <u>COMMON LAW BREACH OF CONTRACT</u>

79.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

80.     At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

81.     Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

82.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, have an hourly rate between $12.00 and $13.00 per hour.

83.     Plaintiff and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid work that was required of them, accepted by Defendant, and that they performed.

84.     For example, Defendant failed to compensate Plaintiff and the Rule 23 Class for essential pre-shift work tasks such as setting up before the kids arrived and attend meetings with Teachers and other staff members.  Additionally, Plaintiff and the Rule 23 Class were not compensated for post-shift work tasks such as cleaning

up classrooms and meeting with parents and staff.

85.     By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the all of the work they performed each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

86.     Plaintiff's and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

87.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing the off-the-clock activities, which is a fundamental part of an "employer's job."

88.     As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Class has been damaged, in an amount to be determined at trial.

89.     These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.  An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Class) pursuant to 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.  An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.  An Order designating Plaintiff as representative of the FLSA Collective and undersigned counsel as Class counsel for the same;

e.  An Order designating Plaintiff as the representative of the Rule 23 Class and undersigned counsel as Class counsel for the same;

f.  An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.  An Order declaring Defendant's violations of the FLSA were willful;

h.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

i.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and Rule 23 Class the full amount of damages and liquidated damages available by law;

j.     An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k.     An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.     An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Channel Allen, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: November 21, 2017     Respectfully Submitted,

/s/Kevin J. Stoops
Kevin J. Stoops (MI Bar No. 64371)
Charles R. Ash, IV (MI Bar No. P73877)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
T: 248-355-0300
E: kstoops@sommerspc.com
E: crash@sommerspc.com

*Trial Counsel for Plaintiffs*

24